(159 App. Div. 279.)

In re BOARD OF WATER SUPPLY OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Third Department. November 26, 1913.)

1. STATUTES (§ 225¼*)—CONSTRUCTION—CONTEMPORANEOUS STATUTES.

While Laws 1905, c. 723, effective June 3d, entitled "An act to establish a state water commission, to define its powers and duties and making an appropriation therefor," should be construed as enacted on the same day as Laws 1905, c. 724, providing for an additional water supply for New York City and the acquisition of lands for reservoirs, and chapter 725, relating to the acquisition of property for a water supply for New York City, both effective on the same day, they should not be permitted to modify each other to a greater extent than is necessary to effectuate each enactment.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 304; Dec. Dig. § 225¼.*]

2. EMINENT DOMAIN (§ 71*)—CONSTRUCTION OF STATUTE.

Laws 1905, c. 723, § 2, effective June 3d, provides that no municipality or other body for it shall, "after this act takes effect," have power to condemn lands for additional water supply without first submitting maps, etc., and section 3 requires the maps to be accompanied by a scheme to provide for compensation for damages to property resulting from the taking of the lands, and that the commission shall determine whether the plans make a fair provision for payment of damages. Held, that chapter 723 was intended to conserve the rights of municipal subdivisions in the local water supply, and was independent of Laws 1905, cc. 724 and 725, providing a complete scheme for additional water supply for New York City, so that the statutes should not be construed together in determining the right of an owner to damages for property taken under chapter 724.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 180-187; Dec. Dig. § 71.*]

3. EMINENT DOMAIN (§ 152*)—COMPENSATION—BUSINESS—BOARDING HOUSE.

Laws 1905, c. 724, § 12, provides that after a hearing upon a claim for damages for property taken for an additional water supply the commission "shall ascertain and determine the just and equitable compensation which ought justly to be made by the city of New York to the owners' or persons interested in the real estate sought to be acquired or affected

by said proceedings, including just and equitable compensation to the owner of any leasehold taken or affected"; section 19 permits persons interested in realty contiguous to the lands actually taken, which may be affected by the construction of the reservoirs, to receive compensation; and section 42 authorizes the award of damages for property not actually taken but damaged, which section was amended by Laws 1906, c. 314, so as to provide that the owner of any established business on June 1, 1905, which was directly or indirectly decreased in value by the acquisition of land, shall have a right to damages for such decrease in value; and section 25 provides that the term "real estate" as used shall include all easements and incorporeal hereditaments, leaseholds, etc., and every interest or right, legal and equitable, in land or water. *Held*, that a claimant who owned an alleged equitable interest in land, already taken and compensated for to the owner, by reason of having conducted a large summer boarding house thereon, under an agreement with the owner, was not entitled to separate damages for the destruction of the boarding house business by the taking of the land under section 42, as amended; since such damage must have been compensated for upon the taking of the land.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 403–406; Dec. Dig. § 152.*]

4. STATUTES (§ 183*)—CONSTRUCTION.

A thing which is within the letter of a statute is not within the statute unless it be within the intention of the Legislature.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 261; Dec. Dig. § 183.*]

Howard and Kellogg, JJ., dissenting in part.

Appeal from Special Term, Ulster County.

In the matter of the application of the Board of Water Supply, on behalf of the City of New York, to acquire real estate. From an order at a Special Term (81 Misc. Rep. 19, 142 N. Y. Supp. 83) denying confirmation of an award made to Frank V. Bishop and another, claimants appeal. Affirmed as modified.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Brown & Slosson, of New York City (Harrison T. Slosson, of New York City, of counsel), for appellants.

Archibald R. Watson, Corp. Counsel, of New York City (William McM. Speer, of New York City, of counsel), for respondent.

WOODWARD, J. Frank V. and De Forest Bishop claim to have been the owners and proprietors of a boarding house and livery business upon a tract of land known as parcel 15, section 1, Ashokan Reservoir, which was taken into physical possession by the city of New York in the developing of its new water supply, under the provisions of chapter 724 of the Laws of 1905 and the amendments thereto, and this proceeding was instituted under the provisions of section 42 of that act as amended by chapter 314 of the Laws of 1906. The commissioners have made an award of $7,250 to these claimants, and the court at Special Term has refused to confirm this award, appointing new commissioners to pass upon the questions involved. Opinions were handed down both by the Business Damage Commission No. 1,

and the learned court at Special Term, and the claimants appeal to this court from the order.

The broad question is presented upon this appeal as to the proper construction and scope of section 42 of chapter 724 of the Laws of 1905, as amended by chapter 314 of the Laws of 1906; it being claimed by the appellants that the proper construction of this act justifies the determination of the commissioners, and that the court erred in refusing confirmation. The appellants urge that the construction of the statute depends in some measure upon the language of a contemporaneous statute (chapter 723 of the Laws of 1905) entitled "An act to establish a state water commission, to define its powers and duties and making an appropriation therefor," and it seems necessary, to a proper determination of this question, to take into view the various statutes having to do with the question of water supply for the city of New York.

[1] Chapter 723 of the Laws of 1905 became a law, to take effect immediately, on the 3d day of June of that year, and upon the same day that chapter 724 and 725 of the same year became operative, so that they are to be read and construed as of the same day, as constituting the will of the Legislature upon a given day, and they are not to modify the language of each other more than is necessary or proper to give full force and effect to each enactment. Chapter 723 (section 2) provides that:

"No municipal corporation or other civil division of the state, and no board, commission or other body of or for any such municipal corporation or other civil division of the state shall, after this act takes effect, have any power to acquire, take or condemn lands for any new or additional sources of water supply, until it has first submitted the maps and profiles therefor to said commission, as hereinafter provided, and until said commission shall have approved the same."

It will be seen that this relates to a time "after this act takes effect," and it cannot be read as a modification of the positive and direct provisions of an act taking effect at the same moment of time. The provisions of section 3 of the act, that the maps, profiles, etc., shall be accompanied "by a plan or scheme to determine and provide for the payment of the proper compensation for any and all damages to persons or property, whether direct or indirect, which will result from the acquiring of said lands and the execution of said plans," and that the commission shall determine "whether said plans make fair and equitable provisions for the determination and payment of any and all damages to persons and property, both direct and indirect, which will result from the execution of said plans," have no relation to the special provisions of chapters 724 and 725 of the Laws of 1905, which have provided a complete scheme for an additional water supply for the city of New York, granting all power necessary for this purpose.

[2] Chapter 723 of the Laws of 1905 was designed to conserve the rights of municipal corporations and other subdivisions of the state in the local water supply, while chapter 724 had for its object the additional water supply of the city of New York, and incidentally

for the municipal corporations of the county of Westchester (section 40, c. 724, Laws of 1905), and both of these acts are complete within themselves and express the powers and limitations designed for each of these purposes, without the necessity of referring to any other act for their proper construction.

[3] Chapter 724, after providing for the organization of the board of water commissioners, the investigation of sources of supply, the making of surveys, maps, reports, etc., enacts (section 7) that, after the proper maps have been filed, the corporation counsel, "shall, upon first giving the notice required in the next section of this act, apply to the Supreme Court at any special term thereof to be held in the judicial district in which the lands or some part thereof shown on the said maps, and the title to which it is proposed to acquire in the proceeding thus instituted, is situated, for the appointment of commissioners of appraisal," and the duties of such commissioners are prescribed by section 12 of the act, among the requirements being that they "shall view the real estate laid down on said maps and shall hear the proofs and allegations of any owner, lessee, or other person in any way entitled to or interested in said real estate or any part or parcel thereof, and also such proofs and allegations as may be offered on behalf of the city of New York." It is then provided that after the evidence is in it shall be reduced to writing, and that the commission, or a majority of the members, "shall without unnecessary delay, ascertain and determine the just and equitable compensation which ought justly to be made by the city of New York to the owners or the persons interested in the real estate sought to be acquired or affected by said proceedings, including just and equitable compensation to the owner of any leasehold taken or affected in this proceeding."

It will thus appear that the condemnation proceeding provided for by the above act is much more comprehensive in its provision for the payment of compensation than those contained in section 3370 of the Code of Civil Procedure. The spirit of the act is further manifested by the provisions of section 19, which affords an opportunity to those owning or interested in real estate contiguous to the lands actually taken "which may be affected by the construction and maintenance of said aqueducts, dams, reservoirs," etc., to come in and establish their claims and to receive compensation therefor. Section 42 of the original act provided as follows:

"In case any person owning private property not actually taken or proposed to be taken under the provisions of this act, but which will in his opinion be damaged by proceedings taken or proposed to be taken thereunder, the board of water supply may agree with such person as to the amount of such damages, and if such agreement cannot be made such damages, if any, shall be determined in the manner herein provided for the ascertaining and determining the value of real estate taken under the provisions of this act, and the amount of such damages so agreed upon as aforesaid or so determined as aforesaid shall be payable and collectible in the same manner as is herein provided in the case of awards made through the confirmation of a report of commissioners of appraisal."

It is entirely clear that, under the act as it originally stood, there was ample provision for awarding full compensation to any one hav-

ing any legal or equitable relation to real estate, for it was provided by section 25 that:

The "term real estate as used in this act shall be construed to signify and embrace all uplands, lands under water, the waters of any lake, pond or stream, all water rights or privileges, and any and all easements and incorporated (sic) hereditaments and every estate, interest and right, legal and equitable, in land or water, including terms for years, and liens thereon by way of judgment, mortgages or otherwise, and also all claims for damages to such real estate."

This clearly contemplated that, where real estate was taken for the water supply of the city of New York, the latter should be compelled to pay all legal or equitable compensation or damages which could have any relation to the real estate so taken, and the claimants here, if they had any rights whatever, would seem to have had them in connection with the real estate which was actually taken. Such real estate was owned in fee by Anna R. Bishop, the mother of the claimants. These claimants had no written lease, but it is claimed that they paid their mother $50 per year, boarded and clothed her, paid the insurance, taxes, and repairs, and that with their mother and their families they occupied the house upon the premises as a residence and boarding house. This house had been built over for the purpose, and contained 35 rooms, and the farm consisted of 106 acres of land, which was tilled by the claimants, a portion of the produce being used in the furnishing of the table for the boarders, and the claimants appear to have used the farm teams in driving the boarders about the country, this constituting their livery business. In other words, the commissioners found a large boarding house and a farm of 106 acres which it was necessary to take for the purposes of the water supply of the city of New York. These premises were owned by Anna R. Bishop, and the claimants who lived upon the premises with the owner had, according to their version, an equitable interest in the real estate as the foundation of their business of catering to summer boarders. The value of the farm, as it must have appeared to the commissioners who appraised the real estate, involved its value as a summer boarding place. This farm was located in Ulster county, and the fact that it was valued at more than $167 per acre shows that it must have had some peculiar elements of value beyond that of mere farming land, and it seems clear to us that the commissioners who appraised its value as real estate, as defined in the statute, must be conclusively presumed to have determined "the just and equitable compensation which ought justly to be made by the city of New York to the owners or the persons interested in the real estate sought to be acquired or affected by said proceedings, including just and equitable compensation to the owner of any leasehold taken or affected in this proceeding." Section 12.

[4] The claimants, if they had any relation to the real estate, were equitable leaseholders, and they are here claiming to have been in possession of the premises as the foundation of their boarding house business, under annual payments to their mother, and demanding further contributions from the city of New York, based upon the provisions of section 42 of the original act as amended by chapter 314

of the laws of 1906. It does not seem to us that they are within the spirit of the law, and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers. Riggs v. Palmer, 115 N. Y. 506, 509, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819. The city of New York has already paid $17,746.53 for 106 acres of land in Ulster county, and the commissioners in Business Damage Commission No. 1 have permitted the claimants to show the cash receipts and expenses connected with their boarding and livery business for a period of five years, and taking the average difference between the receipts and expenditures for these years, have multiplied this sum by five, and have awarded to them the sum of $7,250 as damages for the loss of their business in connection with the premises. In other words, they attempt to justify the granting of five years of alleged profits upon the boarding house business, founded upon this real estate, and these so-called profits or damages are fixed without taking into consideration any of the material items which go to make up a correct estimate of profits, with the exception of the cash receipts and expenses. This is obviously an incorrect measure of damages; but in the view we take of the matter it is not important, for we are clear that the statute did not contemplate such a situation as we are now dealing with.

Bearing in mind that the original statute has provided for compensating for all legal and equitable claims in connection with real estate taken, and that the real estate on which the claimants were doing business was taken under the provisions of the statute, and the compensation fixed by the commissioners has been paid, let us consider section 42 of the act as amended. This provides that:

The "owner of any real estate not taken by virtue of this act * * * or of any established business on the first day of June, nineteen hundred and five, and situate in the counties of Ulster, Albany or Greene, directly or indirectly decreased in value by reason of the acquiring of land by the city of New York for an additional water supply or by reason of the execution of any plans for such additional water supply by the city of New York under the provisions of this act, * * * their heirs, assigns or personal representatives, shall have a right to damages for such decrease in value." Laws 1906, c. 314, § 9.

Obviously the owner of any real estate which had been taken by virtue of this act would not be comprehended by this amendment. If he owned the premises, all of his damages would be included in the broad provisions of "just and equitable compensation which ought justly to be made by the city of New York" (section 12), and the claimants had no business of any kind apart from the premises which had already been taken and paid for. They were tenants of the premises in a measure; they had equitable rights in their informal lease from the mother, and, under the broad provisions of the original statute they were owners of real estate which, it was declared, should "be construed to signify and embrace all uplands, lands under water, * * * and any and all easements and incorporated (sic) hereditaments and every estate, interest and right, legal and equitable, in land or water, including terms for years," etc. If they were not equitable owners of an interest in this real estate, then they had no foundation for a business. They could not have a valuable boarding house business apart

from a house which was adapted to the purpose; their whole claim for damages now before this court is based upon the assumption that they had a continuing right to the possession and occupation of these premises, to the produce of the farm, and to the profits which they might have earned if they had been permitted to retain this possession. If this is true, then they were owners of this equity; they had an "estate, interest and right" of an equitable character, and this was taken. The statute required that the commissioners of appraisal should determine the "just and equitable compensation which ought justly to be paid," and this was to include "just and equitable compensation to the owner of any leasehold taken or affected in this proceeding." Section 12. If they were not the equitable owners of this continuing right of occupation, they could have no legal foundation for damages, for a boarding house, without "a local habitation and a name," would be about as intangible as a "footless stocking without any leg," to quote the Irishman's definition of "nothing."

There has been no taking of the business itself; the claimants' own contention is that their business came from summer boarders from the city of New York, and, having received the full value of the real estate for the particular purposes for which it was adapted, there was no reason why a new boarding house could not have been erected in the vicinity, and there is no good reason suggested why all of the good will of the business might not have been retained to the claimants.

The claimants' own statement of the case discloses, it seems to us, the real purpose of the amendment of 1906, and that was to compensate one whose business had been taken away. The claimants' statement is that "within the 'taking line' were 7 villages, 504 dwellings, 9 blacksmith shops, 35 stores, 10 churches, 1 gristmill, and 7 sawmills," and it is easy to understand that a man who had an established business in one of these villages which was wiped off the map for the purpose of supplying water to the city of New York would be damaged. He would be deprived of his customers for his store, or his blacksmith shop, or his mill, because the people would be called upon to take up their residences elsewhere; but a boarding house, receiving its guests from the city of New York, would lose no perceptible part of its old patrons because the location of the house was changed a few miles more or less. No element of good will would be lost. No value of the furniture would be sacrificed. The sheep, cattle, and pigs, and hens upon the farm would not deteriorate, and it must be presumed that the homestead which was adapted to the uses of a boarding house commanded its full value as such. Indeed, the figures show this upon their face, and it is hardly to be doubted that, if the fee and equitable owners of the original plot had taken the avails and sought a location, they could easily have duplicated the boarding house and all its surroundings for less money than the city of New York has already paid them. If this is true, where is the element of damages to the complainants? It is right and proper, of course, that the city of New York should not, through its necessities, impose burdens upon the people of Ulster county; but it is not just that the city should be held up and looted by a forced and unnatural construction of a statute designed

to do simple justice to those who have, in fact, suffered damages. The fair construction of the statute, read in connection with the other portions of the law, is that where a business has in fact been depreciated, where the customers of a store or other business are forced to move away, thus working an injury to the established business, the city must make good the loss; but in the case at bar no such condition is shown to exist, and the rule of damages attempted to be established is so flagrantly unjust that no court would be justified in approving the report.

The order appealed from should be affirmed, with costs.

Order modified by striking therefrom the part appointing a new commission, and as so modified affirmed, with costs. All concur, except HOWARD, J., voting for affirmance, in opinion in which KELLOGG, J., concurs.

HOWARD, J. (concurring). I concur in the result. The commission proceeded on so many erroneous theories in awarding damages that their report should be denied sanction. I do not, however, concur with Mr. Justice WOODWARD in his conclusion that the claimants in this proceeding must be presumed to have received full compensation for the destruction of their business at the time their mother received her award of $17,746.53 for her land taken; neither do I concur with the assertion that "the claimants had no business of any kind apart from the premises which had already been taken and paid for." If I read the prevailing opinion correctly, it holds that there can be no such thing as a boarding house business separate from the land on which it is conducted, and that when the land is taken and paid for that pays for the business.

A boarding house business may assume immense proportions and produce enormous profits. It may be an asset of great value. It may be worth much more than the premises on which it is conducted. It may have been established for many years; it may have been conducted in more than one building; it may appertain to the man rather than to the place. The owner of the premises may deny to the proprietor of the business a lease for the ensuing year, but if the business clings to the man he can take it elsewhere; take it with him from place to place, from boarding house to boarding house. In fact, because it happens to be a boarding house business, it is no different in principle from a manufacturing business or any other business. In other words, the business in this case and in every case is a thing entirely distinct from the lease, and distinct from the land. The lease has a value, the land has a value, the business has a value; each is separate from the other. Perhaps the value of the lease should have been determined in this instance by the commission which determined the value of the land—I think it should have been—but the value of the business is to be determined here, for it comes clearly within the purview of section 42. That section says:

"The owner of any * * * established business on the first day of June, 1905, * * * directly or indirectly decreased in value by reason of the acquiring of land by the city of New York, * * * shall have a right to damages for such decrease in value."

.These claimants were the owners of an established business. The award to the owners of the land, for the value of the land, in no manner compensated them for the destruction of their business. Notwithstanding this award and notwithstanding its extravagance, if it were. extravagant, and even though the first commission intended, in their award to the mother, to include damages for a destruction of the boarding house business (which they did not), these claimants still have their claim for damages.

KELLOGG, J., concurring.