(81 Misc. Rep. 19.)

## In re BOARD OF WATER SUPPLY.

(Supreme Court, Special Term, Ulster County. May 23, 1913.)

1. EMINENT DOMAIN (§ 265*)—COMPENSATION—ALLOWANCE OF ATTORNEY'S FEES.

In condemnation proceedings, the claimants are not entitled to compensation for counsel.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 690–693; Dec. Dig. § 265.*]

2. EMINENT DOMAIN (§ 237*)—COMPENSATION—AWARDS—CONFIRMATION.

Awards of commissioners in condemnation proceedings should not be disturbed on motion to confirm on account of inadequate or excessive damages, unless it appears that the commissioners proceeded on an erroneous theory, or were influenced by prejudice or passion, or disregarded the evidence.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 604–613; Dec. Dig. § 237.*]

3. EMINENT DOMAIN (§ 126*)—COMPENSATION—DAMAGES.

Where a condemnation injures an established business, damages to the business or good will, which is an attribute of such business, are assessed according to the market value of the business, if any, and otherwise, upon profits; consequently, in assessing the damages to an established boarding house business, where there was no market value, the profits must be calculated after deducting the value of the capital employed and the personal services of the proprietor and his family during the boarding season.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 345–347; Dec. Dig. § 126.*]

4. EMINENT DOMAIN (§ 126*)—COMPENSATION—ASSESSMENT OF DAMAGES.

In assessing damages, in eminent domain proceedings, to a boarding house business carried on at a farm, the value of the farm property must be separated from the value of the boarding house property.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 345–347; Dec. Dig. § 126.*]

5. EMINENT DOMAIN (§ 126*)—BOARDING HOUSE—GOOD WILL.

Ordinarily, the good will of a boarding house, like that of an inn, depends upon its location, and not upon the special qualifications of the proprietor, and therefore in considering damages to such business its movability should be considered.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 345–347; Dec. Dig. § 126.*]

6. EMINENT DOMAIN (§ 126*)—COMPENSATION—MEASURE OF DAMAGES.

In assessing the damages to the business of a physician caused by the condemnation of a large tract of land, the value of an office and barn occupied by him rent free should be considered in determining his profits.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 345–347; Dec. Dig. § 126.*]

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. EMINENT DOMAIN (§ 126*)—COMPENSATION—DAMAGES TO BUSINESS OF PHY-
SICIAN.**

Where the condemnation of a large tract of land injured the business of a physician, and necessitated his removal, the damages should be assessed upon the actual decrease in the value of his business, with regard to any circumstances which would tend to mitigate or lessen them, in which the jury must consider his injury caused by his necessary removal.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 345–347; Dec. Dig. § 126.*]

**8. EMINENT DOMAIN (§ 126*)—COMPENSATION—MEASURE OF DAMAGES.**

Where a condemnation proceeding destroyed a mercantile business, the value of the rent of the store and barn necessary to the business must be considered in computing the value thereof.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 345–347; Dec. Dig. § 126.*]

Application by the Board of Water Supply, on behalf of the City of New York, to acquire real estate under chapter 724 of the Laws of 1905, and the acts amendatory thereof. On motion to confirm awards of damages to which petitioner made a counter motion to reject. Motion to affirm denied, and objections sustained.

Brown & Slosson, for claimants De Forest Bishop and Frank V. Bishop, claim No. 1; George Pierson, claim No. 4; Lisette Corbett, claim No. 5; Albert Brown, claim No. 7; Martha Young, claim No. 19; Matilda Barton, claim No. 84.

Milton O. Auchmoody, of Kingston, for claimant Dr. John D. W. Dumond, claim No. 33.

Wm. D. Brinnier, of Kingston, for claimant Carrie A. Burhans, claim No. 83.

A. R. Watson, Corp. Counsel, and Wm. McMurtrie Speer, Sp. Counsel, both of New York City, opposed.

HASBROUCK, J. This is a motion upon the part of several persons having claims for damages for decrease in the values of their established businesses, because of the taking of lands for the Ashokan Reservoir, etc., to confirm the thirteenth Separate Report of Business Damage Commission No. 1. The petitioner, the city of New York, makes a counter motion to reject such report. Objections are made to part of such report, viz., to the awards upon claims Nos. 1, 4, 5, 7, 19, 33, 83, and 84. All of such claims are for damages to boarding house businesses, except No. 4, which is for a grocery store business, and No. 33, for a physician and surgeon's business.

[1] Among the objections the petitioner makes to these awards are that the commissioners proceeded upon a wrong theory in making them, and made allowances to claimants for compensation of counsel. This court, upon confirming a recent report of Business Damage Commission No. 2, at a Special Term March 1, 1913, refused to grant the motion of counsel for claimants for an allowance for compensation of counsel. The appeal taken from such order reviewing such determination of the court has not been decided. The objection

therefore of the petitioner to allowances for compensation of counsel is sustained.

[2] The rule which obtains upon awards made by commissioners in condemnation proceedings is that such awards should not be disturbed on account of inadequate or excessive damages unless it appears that the commissioners have proceeded upon erroneous theory or have been influenced by prejudice or passion or have disregarded the evidence in the case. Section 776, Lewis on Eminent Domain, 1910.

[3-5] The claim is made against these awards that the commissioners proceeded upon wrong principles in reaching their determination. With their report, the commissioners submitted to the court an opinion stating the items considered by them in determining the value of an established business. In it the commissioners say regarding a boarding house business:

"We cannot assent to the request that we deduct from the earnings of the business the value of the services of the proprietor and the members of his family and also interest upon the capital employed, both real and personal, and credit them to the city." Page 40.

Again:

"To charge the owner of the business in ascertaining the decrease in the value of his business, or in other words his damage with the value of the personal services of himself and his family and the interest upon the value of his farm and chattel equipment of his business, would in many, if not in all cases, wipe out his claim of damage." Page 38.

The view thus expressed is not shared by the court. In dealing with the question of damages to an "established business" it is essential to come to some definition. It is not held that by an "established business" is meant the place, stock, or person, but rather the activities that result in bargains and profits. Braeutigam v. Edwards, 38 N. J. Eq. 542, 543. There is no difference between a business and an "established business," except that the latter description conveys the idea that the business has existed or been carried on for some period of time. There is, as has been observed in the Central Coal & Coke Company Case, a difference between a business and the "good will" of a business. The latter is an attribute of the former. In determining the value of either a "business" or the "good will" of it, the profit earned must be sought. Thus, in cases of the character of those at bar, the rules regulating the ascertainment of damages to or values of businesses have been quite generally satisfied by measurements of the value of the "good wills" of such businesses. The ordinary measure of the value of a business is the market value. It is claimed here, and is not disputed, that at and about the site of the Ashokan Reservoir there was no market for the boarding house businesses at the time the damages to them were sustained. The claimants were compelled to adopt another course in proving value. They undertook to show that their businesses were profitable; and in so doing they proved the gross receipts and the necessary expenses of carrying on such businesses, claiming the difference to be the profit, and that to be the measure of value. The petitioner, in the boarding house claims reported upon,

claimed that among the expenses with which a boarding house business should be charged in arriving at its value should be included interest upon the capital invested in the real property and personal property necessarily used in such business, or the rental value thereof; the reasonable value of the services of the owner and members of his family and the market value of supplies raised by the owners or the cost thereof. This contention of the petitioner has the support of the authorities.

Speaking of personal injury resulting in loss of business, Sedgwick, in his work on Damages (section 181 [9th Ed.]), says:

"In such a case there might enter into the profits of the business several sources of profit; interest on the capital employed, the value of the personal services of the plaintiff, the value of the good will of the business," etc.

In Central Coal & Coke Co. v. Hartman, 111 Fed. 98, 49 C. C. A. 246, Sanborn, Circuit Judge, says:

"Now, the anticipated profits of a business are generally so dependent upon numerous and uncertain contingencies that their amount is not susceptible of proof with any reasonable degree of certainty; hence the general rule that the expected profits of a commercial business are too remote, speculative, and uncertain to warrant a judgment for their loss. * * * There is a notable exception to this general rule. It is that the loss of profits from the destruction or interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what the amount of his loss actually was. The reason for this exception is that the owner of a long-established business generally has it in his power to prove the amount of capital he has invested, the market rate of interest thereon, the amount of the monthly and yearly expenses of operating his business, and the monthly and yearly income he derives from it for a long time before, and for the time during the interruption of which he complains. * * * The interest on the capital and the expenses deducted * * * show * * * the actual net income."

Without further citations it must be apparent that, to find the profit, interest on capital must be reckoned an expense.

Neither can the value of an established business be properly found without consideration of the value of the services of the proprietor and his employés. Section 181 [9th Ed.] Sedgwick on Damages; Central Coal Co. v. Hartman, supra; Sawyer v. Commonwealth, 185 Mass. 360, 70 N. E. 438. Profits earned by a business where it was not charged with the value of the services of the owner and his wife and children, where they worked for it, cannot be regarded as other than fictitious. Services to a business for which no charge is made must be in the nature of a gift. A business which does not earn a profit, but has a profit as the result of services given to it, cannot be claimed to have a value based upon profit. This is as true of a boarding house business as of any other business.

The boarding house business is a well-recognized business in the vicinity of the Ashokan Reservoir, and many such businesses have value. In ascertaining their values where they are connected with farms, the farm property and the boarding house property should be for the practical purpose of ascertaining the amount of capital employed separated. Woodhull v. Rosenthal, 61 N. Y. 383.

The boarding house business should not be charged with the serv-

ices of the owner and his family for the whole year, but only for such part of the year as the business is transacted in. Where the value of the established business consists in good will alone, and that value is measured by profits, the multiple of years should be determined by the commissioners.

If interest on capital, services of owners and wives and children, and market price of vegetables used are proper expenses to be considered in finding the profit, and thus the value of a boarding house business, then the commissioners of Business Damage Commission No. 1 failed to use a proper measure in determining the value of the following boarding house claims: 1, 5, 7, 19, 83, and 84.

The value of the good will of a boarding house business and that of a physician is somewhat different. Ordinarily the value of a boarding house, like that of an inn, depends upon its location. Elliot's Appeal, 60 Pa. 161. And it may not depend upon any special qualification of the proprietor. It is important to consider the movability of a business in finding how much its owner has been damaged by its injury.

[6] Regarding claim No. 33 of Dr. Dumond, the commissioners say in their opinion that:

"As his wife did not choose to charge him anything for the rent of his office and barn, we know of no reason why any deduction should be made for such an item in the interest of the city."

We think in determining his net earnings the rental value of such space as he used for his business in the house and barn should be deducted.

[7] The fact that Dr. Dumond earned after the taking of the property where his office was located nearly or quite as much as he earned before, though proven, does not throw much light upon his damage. For in place of the patrons evicted by the taking of the land have come the men to construct the reservoir, and the doctor's practice has thus been fictitiously sustained. For when the work is completed his old patrons and his new ones will both have gone. Thus the decrease in the value of his business may become correctly apparent.

The rule stated in the Supreme Court of Massachusetts is:

"In estimating the * * * value of the business of a * * * physician, * * * the damages are to be assessed for the actual decrease in value of that business, and not merely for the decrease in such elements of the value as admit of being sold. The decrease in the money value of the petitioner's business to himself is to be estimated. Earle v. Commonwealth, 180 Mass. 579, 63 N. E. 10, 57 L. R. A. 292, 91 Am. St. Rep. 326.

In finding the injury done to the business of a physician, regard should be had for another principle of law. It has been held proper where one whose occupation or business has been interrupted or injured by an act of a stranger, and thereby damaged, to prove any circumstances in abatement of such damages which will tend to mitigate or lessen them.

The late Prof. Theodore W. Dwight, writing for the Court of Appeals in Howard v. Daly, 61 N. Y. 377, 19 Am. Rep. 285, quoted

Cockburn, C. J., in Frost v. Knight in the Exchequer Chamber as follows:

"On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it; and on such action he will be entitled to such damages as would have arisen from the nonperformance of the contract at the appointed time; subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

In Dickinson v. Hart, 142 N. Y. 188, 36 N. E. 802, Earl, J., said:

"The plaintiff proved the gross amount of his sales in each of the two years he was in the defendant's store, and the amount of his net profits, showing that during the last year his sales and profits had largely increased. He also proved what income he was able to make in his business elsewhere during the succeeding year, and what he was able to earn after his business in the defendant's store had been broken up; and from these and other facts appearing in the record there was a basis, however unsatisfactory, for the amount of damages awarded by the jury." Waterman on Set-Off (2d Ed.) p. 523.

The United States Supreme Court says:

"It is true he nowhere instructed the jury to make the profits of the business the criterion of value, nor indeed would he have been justified in so doing. The profitableness of the business was undoubtedly a matter to be considered and so the judge fairly intimated in these prior colloquies. But the profits of a business are not destroyed unless the business is not only there stopped, but also one which in its nature cannot be carried on elsewhere. If it can be transferred to a new place and there prosecuted successfully, then the total profits are not appropriated, and the injury is that which flows from the change of location. Backus v. Fort Street Union Depot Co., 169 U. S. 575, 18 Sup. Ct. 445, 42 L. Ed. 853.

There are so many elements entering into the ascertainment of damage to a physician because of being compelled to move from his old site, that it is particularly within the province of a jury to determine them in the light of all the facts and circumstances. The award of Dr. Dumond on claim No. 33 is set aside and vacated because of the error herein pointed out.

[8] Regarding claim No. 4, of Pierson: After finding the gross receipts of the store business which Pierson conducted, the commissioners did not reckon among the expenses to be charged up against said business in ascertaining its value the rental of the store and barn nor any interest on the capital invested in the stock of merchandise and the property necessary for the operation of a country store business. This likewise constitutes error.

Motion to confirm denied. Objections sustained. Awards Nos. 1, 4, 5, 7, 19, 33, 83, and 84 are vacated and set aside, and John D. Schoonmaker, George B. Wellington, and Seamon Miller are appointed commissioners to hear said claims and make awards thereon.