**BISHOP, Plaintiff-Appellee v. EAST OHIO GAS CO.,
Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 18969.   Decided June 28, 1943.

356

Payer, Bleiweiss & Cook, Cleveland; Snyder, Seagraves, Roudebush & Adrian, Cleveland, for plaintiff-appellee.

Jones, Day, Cockley & Reavis, Cleveland, for defendant-appellant.

GUERNSEY, P. J., and Jackson, J. (Third District), and SHERICK, J. (Fifth District), sitting by designation in the Eighth Appellate District.

## OPINION

By GUERNSEY, P. J.

This is an appeal upon questions of law, from a judgment of the Common Pleas Court of Cuyahoga County, Ohio, in an action pending therein wherein the appellee, S. M. Der-Hagopian Bishop was plaintiff and the appellant, The East Ohio Gas Company was defendant.

The action is one for damages for the destruction of two cultures of Almalac, a lactic acid milk preparation of the sour

milk type, and the consequent destruction of plaintiff's business of manufacturing and selling Almalac founded upon such cultures, allegedly caused by an unlawful entry of an employee of the defendant into the basement of the house wherein the plaintiff lived and had his laboratory for the production of such cultures.

The case was tried before a judge and jury in 1939 and a verdict of $10,500.00 was returned, and after a remittitur of $3250.00, a judgment was entered for $5250.00. The Court of Appeals reversed the judgment for error in the admission of evidence and for the further reason that the verdict was excessive, appearing to have been given under the influence of passion and prejudice. Thereafter, a second trial was had in the Common Pleas Court in 1942 wherein a verdict was returned for plaintiff in the sum of $15,000.00 and again a remittitur was made in the sum of $4500.00 and judgment was entered in the sum of $10,500.00.

It is from the second judgment that this appeal is taken.

The material facts in the case, as disclosed by the record, are as follows:

In 1903, the plaintiff brought from his native land, Armenia, a four ounce portion of Yoghourt. Yoghourt is the name of a lactic acid milk made from cow's milk and contains an active agent known as Bacillus Bulgaricus. This Yoghourt milk is reputed to have been used in the Balkan States for a long time and the longevity of the inhabitants thereof is attributed to the use of this milk. Yoghourt is considered a remedy for indigestion, constipation, gas formation and other intestinal tract disorders. Almalac had similar therapeutic effects.

After his arrival in this country the plaintiff matriculated as a student at the University of Michigan at Ann Arbor, Michigan, and received from such University the degree of Bachelor of Arts, Bachelor of Science and Pharmaceutical Chemist. He thereafter worked for short periods of time for various pharmaceutical houses.

After a series of chemical, bacteriological and physiological tests and research, the plaintiff segregated from the fourteen types of bacilli present in Yoghourt milk, five beneficial, healthy, harmonious and active bacilli thereby eliminating nine types of bacilli which were not beneficial. From the segregat-

ed bacilli he produced a lactic acid milk culture which he named Almalac, and had the name copyrighted. One of the bacilli in the Almalac culture was similar to, if not identical with, Bacillus Bulgaricus.

There is no evidence tending to prove that the therapeutic effects of Almanlac differed in any way from or were in any way more beneficial than the therapeutic effect of Yoghourt or similar lactic acid cow's milk preparations containing Bacillus Bulgaricus. Lactic acid milk cultures, including cultures of Bacillus Bulgaricus, are readily obtainable on the market at prices ranging from one dollar to two dollars per culture.

The business of the manufacture and sale of Almalac by the plaintiff began in October, 1916, and ended on the 29th day of April, 1935, when the two cultures of Almalac plaintiff had on hand were destroyed by the unlawful entry of defendant's employee on the premises of plaintiff, as hereinafter mentioned.

In addition to making Almalac, plaintiff also made and sold other milk products which he called Acidophilus, Bulgaris, Vilac, Almabacil and Kumyss.

From 1917 to 1921, inclusive, ninety-five percent of the profit of his lactic acid milk business accrued from the sale of Almalac, and from 1922 to April 29, 1935, inclusive, ninety percent of his profits accrued from the sale of Almalac.

On April 29, 1935, in the middle of the afternoon, an employee of the defendant entered the basement of the home of plaintiff for the purpose of sealing a meter on account of the non-payment of a gas bill which was owing by the plaintiff to the defendant. Entrance to the basement was gained through a trap door which as it swung on hinges could be lifted up. From this trap door defendant's employee descended eight or nine steps to the outsidebasement door which was locked shut by a padlock on the outside and by means of two hooks, one fastened over the head of a screw and the other fastened in an "eye" on the inside. The meter was on the side of the basement opposite the door. The employee of the defendant, after opening the trap door and proceeding down the steps to the basement door in some manner unlocked the padlock on the outside of the basement door and forced the door open, the force used by him being sufficient to displace the hook which went over the screw head and to pull out the other hook on

the inside of said door. Defendant's employee then proceeded to the meter and sealed it, leaving notice to that effect, and then retraced his steps, locking the padlock on the ouside of said door.

Behind this inner door in the basement proper, on a board about two inches wide, a foot long and an inch or an inch and a half thick, about one foot from the door, were placed two Erlenmeyer flasks containing the only cultures of Almalac which the plaintiff then owned or possesed. These flasks were made of thin glass, somewhat pyramidical in shape and were sealed with cotton. These cultures were placed by the plaintiff in the basement from force of habit and perhaps to protect his Almalac cultures from contamination by his other cultures which he had in his laboratory on the first floor of his dwelling house. The temperatures in the basement and in the laboratory were about the same.

When the inside door was pushed open by defendant's employee it struck the Erlenmeyer flasks containing the Almalac cultures and broke them and spilled the contents on the floor, resulting in the complete destruction of the flasks and the cultures. Plaintiff had and has no sample, formula, or analysis of the culture of Almalac. At one place in the record his testimony is to the effect that the cultures cannot be reproduced, and at another place his testimony is to the effect that it may take a year to ten years of research and experimentation to reproduce the culture.

From the business records of the plaintiff in evidence, and his testimony that ninety-five percent of his profit for the period from 1917 to 1921, inclusive and ninety percent of his profit for the period from 1922 to April 29, 1935, inclusive, accrued from the sale of Almalac, it appears that plaintiff, from the manufacture and sale of Almalac for the years 1917 to 1934, inclusive, had a net average annual income of $1861.18; for the period from 1925 to 1934, inclusive, a net average annual income of $1220.16; for the years 1930 to 1934, inclusive, a net average annual income of $539.61; and for the first four months of 1935, the sum of $99.30 which if continued and carried out at the same ratio for the balance of the year would yield a net average annual income of $297.09.

From May 1, 1925, to May 1, 1935 a period of ten years, considering the business year as starting on May 1st and end-

ing on April 30, plaintiff had a net average annual income of $1167.78; and from May 1, 1930 to May 1, 1935, a period of five years, plaintiff had a net average annual income of $532.86. However, in making the foregoing computations, no deduction has been made for the reasonable value of the services rendered by plaintiff in connection with said business and no deduction has been made for any business expenses for the first four months of 1935.

The peak of the business occurred in the year 1923, from which time the business gradually diminished to the point of extinction.

Plaintiff's own testimony discloses that in computing the net annual income of the business he had made no deduction for the personal services rendered by him in connection with the business. The only evidence that in any way relates to the value of plaintiff's services to the business, is the testimony of the plaintiff appearing on pages 191 to 196 of the Bill of Exceptions, the material part of which is as follows:

"Q. Mr. Bishop, what in your opinion is the fair and reasonable value on a per annum basis, yearly basis, of the services you rendered in operating your business during the period while you were engaged in it?

A. Would you be kind enough to ask me again, the same question?

(Question read by the reporter)

A. I wonder how I could answer it? I would take a basis and if I were to take it, my income, monthly income, I might give an answer. Now, I can—if I may say the amount of my income.

Q. The amount of your income?

A. Yes, sir.

Q. Do you mean your gross income?

A. My—

Q. Net income?

A. Well—

Q. As shown by your books?

A. Well, either. Either one, you might find—

Q. You answer the question.

(Question read by the reporter)

The Court: You see, the question is addressed to your

opinion, and that is all, as to what, in your opinion, would be the reasonable value of your services to that business.

The Witness: Well—

The Court: That is something that is a matter of opinion and you can give your opinion on that.

The Witness: Well, your Honor, the only way I can say this, that in more than eighteen years, my Almalac business has paid me over one hundred and fifty dollars a month and I can take that as a basis.

Q. All right. Then, would you say that the reasonable value of your services to the business was one hundred and fifty dollars a month?

A. Under all of the circumstances.

Q. Yes.

A. But it would be higher if my other circumstances, if there was no sickness in my home, and if I were able to take care of the business. If I were able to take care of the orders, then it would be much higher.

Q. Let me ask you this question, Mr. Bishop: What, during that period, was the fair and reasonable value of the services of a pharmaceutical chemist, working, say, for a pharmaceutical house?

A. Well, that would be between seventy-five dollars a month to about a hundred and twenty-five dollars a month, or one hundred fifty dollars at the highest.

Q. So what would have been the fair value of the services of a pharmaceutical chemist, who had ten years of experience, and who was a graduate of a university with a Ph.C. and a Bachelor of Science degree?

A. Well, I would say, some might be working as low as one hundred dollars a month, others might have been the chief chemist, and so on, might have been making two hundred, and two hundred and fifty dollars."

The equipment used in the business at the time of the destruction of the cultures was very meager and there is no evidence that it was of any value.

Over the objections of the defendant, the following questions were submitted to the plaintiff:

"Q. Now have you an opinion as to the reasonable financial loss which you sustained by reason of being unable to continue your business, the manufacture of Almalac?

A. Yes.

Q. All right. Now, what is your opinion?

A. $25,000.00."

Except insofar as plaintiff's testimony as to the reasonable financial loss sustained by him through the destruction of the cultures may reflect on the value of the business, and the evidence of the income derived by plaintiff from the conduct of the business prior to its destruction, there is no evidence of the value of the business claimed to have been destroyed.

The application made by plaintiff to defendant pursuant to which gas was supplied by the defendant to the premises occupied by plaintiff, among other things provided that the applicant agreed "that the agents of said company shall have free access to the gas meter, pipes and connections at any time; and may remove the meter for any purpose; or upon failure to comply with any of the rules of said company, or for any indebtedness whatsoever, may in addition, sever connection with the gas service."

That there were in continuous effect in the City of Cleveland during the existence of plaintiff's Almalac business, and subsequent to 1921, ordinances requiring a person engaged in the preparation and sale of milk, to procure a license.

There were also in continuous effect since October, 1921, ordinances prescribing the places where food may be manufactured and the places where food may not be manufactured, and prescribing the location of milk houses, dairies etc.

Copies of such ordinances were not offered in evidence and there is no evidence showing the provisions thereof.

The plaintiff did not at any time secure a license to engage in the sale of milk, but at one time was informed by an employee of the Health Department of the City that it was unnecessary for him to procure such a license for the conduct of his business.

Plaintiff predicates his claim for damages, and the measure thereof, solely upon the theory that the two cultures of Almalac destroyed by the wrongful act of the servant of the defendant, was impracticable of reproduction and consequently

that the destruction of the cultures resulted in the destruction of his business of manufacturing and selling Almalac, and that by reason thereof he is entitled to damages in an amount sufficient to compensate him for the loss of such business.

The defendant assigns error in the following particulars:

1. The·verdict and judgment are contrary to the weight of the evidence.

(a)· In finding an unlawful entry into plaintiff's basement.

(b) In finding that Almalac was destroyed.

2. The verdict and judgment are contrary to law.

3. The verdict and judgment are not sustained by sufficient evidence in respect of the amount thereof.

(a) Plaintiff's Almalac business operated at a loss and had no value.

4. The verdict is excessive and appears to have been given under the influence of passion and prejudice.

5. The court erred in its charge to the jury.

6. The court erred in overruling defendant's motion for new trial and in entering judgment for plaintiff.

### Assignment 1. (a)

While the evidence upon which the finding of unlawful entry into plaintiff's basement, is based is wholly circumstantial and is in direct conflict with the testimony of defendant's employee as to the nature of his entrance, such evidence supporting said finding is credible and substantial and said finding is not contrary to the weight of the evidence.

The permission to enter the premises prescribed in plaintiff's application to defendant for the use of gas on the premises did not contemplate and did not authorize a forceful entry.

It follows that this assignment is without merit.

### Assignment 1. (b)

The testimony of the plaintiff is direct and positive to the effect that the Almalac was destroyed, and this testimony which is substantiated and apparently credible, is sufficient to support the finding and the finding is not against the weight of the evidence.

This assignment is also without merit.

### Assignment 2.

The appellant contends that the verdict and judgment are contrary to law for the reason that the evidence discloses that

the business of plaintiff was operated in violation of ordinances of the City of Cleveland and that the plaintiff carried on such business without obtaining a license to prepare, store and sell milk as prescribed in said ordinances and in carrying on such business in a place which said ordinances prescribed should not be used for the manufacture or sale of food, or the sale, handling or storage of milk; and consequently, the business of plaintiff being operated in violation of such ordinances, no recovery could be had for its destruction.

Where a business is unlawful by reason of being prohibited by statute, or as against public policy, no recovery on the basis of profits may be had for its interruption or destruction, but the mere fact that a business was unlicensed where a license was required, does not defeat a recovery on the basis of profits where its practice without a license is not forbidden, and where the business as in this case, is of such a character that the granting of a license does not involve the exercise of discretion on the part of the granting authority, and may be enforced as a right by the person seeking such license. 15 Amer. Juris. Damages, Section 157, page 575; 52 L. R. A., 65, 67.

Nor does the fact that such business is carried on in a place not permitted by ordinance defeat such recovery as such place may be changed to meet the ordinance requirements or the business removed to a location conforming to ordinance requirements. Such change or removal might reflect on the amount of profits derived from such business, but there is no evidence to this effect in the record, and in the absence of such evidence it will be presumed that such change or removal would not affect such profits.

This assignment of error is therefore without merit.

Assignment 3.

This assignment of error, as well as assignments of errors 4, 5, and 6, to a greater or less degree involve the question as to the proper measure of damages applicable upon the facts in evidence, to the injury sustained by plaintiff through the destruction of the two cultures of Almalac and the consequent destruction of the business based on the manufacture and sale of Almalac and the proper method of ascertaining and fixing the amount thereof.

The usual measure of damages for the tortious destruction

of property is the market value of the property destroyed, at the time it was destroyed, and such measure of damages was applicable to the two cultures destroyed as the evidence relating to the market value of similar cultures was sufficient to warrant the jury in finding the cultures destroyed to be of the same value.

Such measure of damages, however, is not applicable to the destruction, incident to the destruction of the two cultures, of the established business based upon such cultures, as there was, and by reason of its character there could be, no evidence of the market value of such business.

In situations of this character, in the absence of evidence of the market value of property damaged or destroyed, the following general rules as to the measure and ascertainment of damages apply, to-wit:

1. "The fact that personal property which is injured or destroyed by the wrongful or negligent act of another has no market value does not restrict the recovery to nominal damages only; its value or the plaintiff's damages must be ascertained in some other rational way and from such elements as are attainable." 15 American Juris, Damages, Sec. 125, page 534.

2. "Where there is more than one method of estimating damages, that method which is most definite and certain should be adopted." Rhodes v Baird, 68 Oh St 573-581. 25 C. J. S., Damages, Sec. 72, page 562. 17 C. J., Damages, Sec. 167, page 846.

The rational way of ascertaining plaintiff's damages the elements of which are attainable as they appear in evidence, and the method which by reason of the nature of the property destroyed is most definite and certain, is set forth in the following rules, to-wit:

1. "Where a regular and established business is wrongfully injured, interrupted or destroyed, its owner may recover the damages sustained, providing he makes it appear that his business was of that character and that it had been successfully conducted for such length of time that his profits from it are reasonably ascertainable—the correct rule for compensating the injured party being the ascertainment of how much less valuable the business was by reason of the interruption

and the allowance of that amount of damages. As the value of such a business depends mainly on the ordinary profits derived from it, such value cannot be determined without showing what the usual profits are." Yates v Whyel Coke Co., 221 Fed. Rep., page 603-607; 17 C. J. Sec. 200, page 914; Central Coal & Coke Co. v Hartman, 111 Fed. 96; Allison v Chandler, 11 Mich. 542, 558."

2. "The damage can be shown by proving the reasonable profits anterior to the wrong complained of." Sutherland on Damages, Vol. 1, 4th Ed. Sec. 70, page 266.

3. "In determining the value of a business on the basis of the net income it is necessary to deduct from the gross income all operating, depreciation and overhead expenses including reasonable compensation for personal services of the proprietor rendered to the business." In re Board of Water Supply, 142 N. Y. Supp., 83.

4. "The value of the business can be determined by capitalizing at a fair rate of return, the average annual profits (or net income) for a reasonable number of years. In re Board of Water Supply, 211 N. Y. 174; 105 N. E., 214 (1914) affirming 142 N. Y. Supp. 83. **Lloyd v Lloyd Bros. Pharmacists, Inc., 15 OO 50, 29 Abs 225.**

Considering the facts in evidence, in the light of the foregoing rules, it is obvious that the testimony of plaintiff to the effect that in his opinion the reasonable financial loss which he sustained by reason of being unable to continue the manufacture of Almalac is twenty-five thousand dollars, was inadmissible for the reason that there were facts in evidence (attainable elements) from which such financial loss, under the rules mentioned, could be rationally and definitely and certainly determined, precluding resort to evidence and rules for determining such financial loss of a less definite and certain character. Such testimony of plaintiff was therefore inadmissible and without any probative effect and is not a matter for consideration in determining the loss sustained by him.

Under the foregoing rules, such loss can be determined only by capitalizing, at a fair rate of return, the average annual profits (or net income) for a reasonable number of years, after first deducting from the average annual profits, as shown by plaintiff's records, reasonable compensation for the personal services rendered by plaintiff to the business

which were not deducted in determining such average annual profits.

The burden was upon the plaintiff to prove his damages, and such damages being provable only from a consideration of the profits of the business destroyed, when plaintiff's evidence disclosed that he had not deducted the reasonable value of the services rendered by him to the business, as an expense of the business, in computing such annual profits, it became incumbent upon him to prove the reasonable value of such services so that the same might be deducted from the annual income as shown by his books and the jury might then determine his actual annual net income from the business and make their computations, under the rules mentioned, accordingly.

The deduction to be made is the deduction of the reasonable value of plaintiff's services to the business. His services to the business, as shown by his testimony, comprehended not only general supervision and management of the business, but the performance by him of all work incident to the reproduction of cultures, the purchase of raw materials, the solicitation and booking of orders, the manufacture and sale of the finished products, and the keeping of the books and records thereof.

The services of a pharmaceutical chemist working for a pharmaceutical house are not similar or comparable to the services rendered by plaintiff in connection with the business in which he was engaged, and consequently plaintiff's testimony as to the fair value of the services of a pharmaceutical chemist having qualifications similar to those of plaintiff, did not reflect in any way on the reasonable value of his services to the business, and for this reason is, on this issue of fact, of no probative value and is not a proper subject for consideration in determining the reasonable value of plaintiff's services to the business.

The only evidence reflecting upon the reasonable value of plaintiff's services to the business, is plaintiff's own testimony to the general effect that such services were reasonably worth one hundred and fifty dollars per month.

Whether the reasoning upon which plaintiff purports to predicate this conclusion is logical or illogical, is immaterial, as it was incumbent upon plaintiff to prove the fact estab-

lished by this conclusion and as plaintiff's testimony, as above mentioned, is the only evidence reflecting upon the subject, the opinion expressed by plaintiff as to the value of such services is conclusive insofar as the plaintiff is concerned.

This being the case, it is necessary, in determining the net profits of the Almalac business over a period of years, to deduct each year from the annual income attributable to such business the sum of $1620.00 for the services rendered by plaintiff to the business, said sum being the same percentage of the value of such services to the whole business as the profits derived from the manufacture and sale of Almalac are of the whole profits of the business conducted by plaintiff.

What is a reasonable number of years for the purpose of capitalizing the average annual profits of a business in determining its value is a question which has not been definitely settled by the courts.

Different courts have held that periods of years varying from two to ten years immediately preceding the time as of which the profits are to be capitalized are reasonable periods for such purpose, but all courts are in agreement that in capitalizing profits, the annual profits earned during the years that are nearest in point of time to the date as of which the profits are to be capitalized are to be given greater effect than annual profits of years more remote from such date, and that annual profits may be so remote in point of time that they are not to be considered as reflecting upon the value of the business.

The period of ten years immediately preceding the date as of which the profits are to be capitalized was approved, adopted and applied by the courts in the case of **Lloyd v Lloyd Brothers, Pharmacists, Inc., 15 OO 50, 29 Abs 225,** as a reasonable period for such determination.

Such ten year period represents a complete business cycle, and there are no facts in evidence tending to prove that the business in question was subject to any different conditions or greater vicissitudes than other businesses during the same cycle.

We approve this holding as a correct statement of the law applicable to the business in question and other businesses which have been in existence ten years or more, and as a corollary hold that profits in years more remote than such

ten-year period are not to be considered as reflecting upon the value of such business.

The court in the case last mentioned held that for the purpose of capitalizing annual profits for such ten year period, the weighted average of annual profits should be determined by multiplying the annual profits for the last year of the ten year period (being the 10th year) by ten; for the ninth year by nine; for the eighth year by eight; and by multiplying in the same degressing scale of multiples the profits for the preceding years of such period of ten years, and then adding together the totals of such multiplications and dividing the same by fifty-five (being the number of years profits represented by the totals of such multiplications) the result being the weighted average of annual profits during the period. That this result should then be divided by the number of the percentage representing the fair rate of return on the investment, and this result in turn multiplied by one hundred, this final result being the capitalized value of the business.

In the case mentioned, the court who was the trier of both the facts and the law, determined that eight percent was a fair return on the investment.

In the instant case, we are of the opinion that the rate of return on the investment is a question for the jury, under proper instructions to the general effect that where a business to be capitalized consists wholly of intangible property, as in this case, the rate of return should be fixed at a higher percentage than where the business to be capitalized consists wholly or partly of tangible property.

In the instant case, when the deduction for the reasonable value of plaintiff's services is made from the average annual earnings (without regard to the weighted average thereof) of the Almalac business for the period of ten years from May, 1925 to April 29, 1935, it appears that the business was operated at an average loss of $552.12 per year, or a total loss of $5521.20 for the ten year period; and when such computation is based on the weighted average of said annual profits during said period, the average annual and total loss appears much greater.

It is therefore clear that the business, which had constantly diminished in volume and profits for the ten year period from May 1925 to April 29, 1935, under the rules as to

capitalization of profits applicable thereto, was wholly worthless and that the plaintiff sustained no pecuniary loss through the destruction thereof.

The only loss that plaintiff sustained, as shown by the evidence, was the loss of the two cultures, the market value of which did not exceed two dollars each, or a total of four dollars, and insofar as the judgment exceeds this amount it is excessive and contrary to law in that it is not sustained by any evidence. This requires the modification of the judgment by reducing the amount thereof to the sum of four dollars, being the total amount of the damages which there is any evidence to sustain, unless other errors intervened which require reversal of the judgment insofar as it relates to damages to the extent of four dollars as aforesaid.

We will therefore consider together assignments of error 4, 5 and 6, to determine whether such error intervened.

### Assignment 4.

The disposal of the foregoing assignment renders it unnecessary to consider the contentions of appellant under assignment 4, as none of them in any way reflect on the validity of the judgment as proposed to be modified.

### Assignment 5.

Under this assignment the appellant contends that the court erred in its general charge to the jury.

It is our conclusion that the court did err in its charge insofar as its instructions as to the measure of damages and the method of ascertainment thereof vary from the rules as to measures of damages and the ascertainment thereof, which we have discussed under Assignment 3.

We further conclude that the court in instructing the jury as to measure of damages and means of ascertainment thereof in connection with the claimed destruction of the business, erred in the following particulars, among others, to-wit.

1. There being no evidence tending to prove the market value of the established business claimed to have been destroyed, the court erred in failing to instruct the jury that said business had no market value, and in submitting the question as to whether it had a market value, to the jury.

2. In instructing the jury that in the event the business destroyed had no market value, that its value should be measured by "what it was worth to the plaintiff."

This instruction was erroneous in that there were facts in evidence from which such value could be definitely and certainly determined in a rational way, that is, evidence as to profits for years anterior to the date of the destruction, from which such value could be determined by capitalization; and in not charging such rational way of determining the value as the exclusive way in which such value could be determined.

3. In instructing the jury that it was not bound to follow the method of capitalizing profits to determine the damage.

This instruction was erroneous for the reason above mentioned.

4. In submitting to the jury conflicting rules as to measure of damages and ascertainment thereof.

5. In the indefiniteness of the instructions to the jury on the subject of its function in determining the amount of damages the instructions being so indefinite in this respect that the members of the jury might well assume that they had uncontrolled discretion to determine the amount of damages in any manner they might see fit.

These errors are each and all of such character as to require the reversal of any judgment predicated upon the finding of damages in any amount to the business, but such errors do not in any manner reflect on the validity of the judgment as proposed to be modified, predicated upon the damages sustained by the plaintiff through the destruction of the cultures measured by the market value thereof at the time of the destruction.

For the reasons hereinbefore mentioned, the judgment herein will be modified by reducing the principal sum thereof to four dollars, and as modified the judgment will be affirmed.

SHERICK, J., concurs.
JACKSON, J., dissents.

JACKSON, J., dissenting:

The history of the case discloses that it was tried before a judge and a jury in 1939 in the Court of Common Pleas of Cuyahoga County, and a verdict of $10,500.00 was returned, and after a remittitur of $5250.00 a judgment was entered for $5250.00. The Court of Appeals for Cuyahoga County reversed

the judgment for errors in the admission of evidence, and for the further reason that the verdict was excessive and appeared to have been given under the influence of passion or prejudice. Thereafter, a second trial was had in the Common Pleas Court in 1942, wherein a verdict was returned for the plaintiff in the sum of $15,000.00 and a remittitur was made in the sum of $4,500.00 and judgment was entered in the sum of $10,500.00. It is from the second judgment that this appeal is had.

The claim of the plaintiff is an action for damages based upon the destruction of two cultures of Almalac, a lactic acid milk preparation of the sour milk type which demolition was caused by an unlawful entry of an employee of the defendant into the basement of the house wherein the plaintiff lived and had his laboratory.

In 1903, the plaintiff brought from his native land Armenia, a four ounce portion of Yoghourt. Yoghourt is the name of a lactic acid milk or sour milk made from cow's milk and contains an active agent known as Bacillus Bulgaricus. This Yoghourt milk is reputed to have been used in the Balkan States for a long time and the longevity of the inhabitants thereof is attributed to the use of this milk. Yoghourt is considered a remedy for indigestion, constipation, gas formation and other intestinal tract disorders. It is claimed that Almalac had similar therapeutic effects.

After his arrival in this country the plaintiff obtained the degrees of Bachelor of Arts, Bachelor of Science, and Pharmaceutical Chemist, and thereafter worked for short periods of time for various wholesale pharmaceutical houses.

After a series of chemical, bacteriological and physiological tests and research, the plaintiff claims that from this Yoghourt milk he eliminated the harmful or destructive bacilli and was able to segregate five beneficial healthy and active bacilli and from the resulting separation he obtained a lactic acid milk which he named Almalac and had the name copyrighted. One of the bacilli in the Almalac culture was similar to, if not identical with, Bacillus Bulgaricus.

There is no evidence tending to prove that the therapeutic effects of Almalac differed in any way from or were in any way more beneficial than the therapeutic effect of Yoghourt or similar lactic acid cow's milk preparations containing Bacillus Bulgaricus. Lactic acid milk cultures, including cultures

of Bacillus Bulgaricus, are readily obtainable upon the market at prices ranging from one dollar to two dollars per culture.

The business of the manufacture and sale by the plaintiff began in October, 1916, and ended on the 29th day of April, 1935. In addition to making Almalac, plaintiff also made and sold other milk products which he called Acidophilus, Bulgaris, Vilac, Almabacil and Kumyss.

From 1917 to 1921, inclusive, ninety-five percent of the profit of his lactic acid milk business accrued from the sale of Almalac, and from 1922 to 1934, inclusive, ninety percent of his profits accrued from the sale of Almalac.

On April 29, 1935, in the middle of the afternoon, an employee of the defendant entered the basement of the home of the plaintiff for the purpose of sealing a meter by reason of the non-payment of a bas bill which was owing by the plaintiff. Entrance into the cellarway consisted of a trap door with a lock thereon, and by proceeding down eight or nine steps there was a door fastened by two hooks on the inside. The meter which was sealed was on the far side of the basement.

It is claimed by the plaintiff that the employee of the defendant in some manner opened the trap door, proceeded down the steps and forced open the inner door. Behind this inner door in the basement proper, upon a board about two inches wide, a foot long and an inch or an inch and a half thick, about one foot from the door, were placed two Erlenmeyer flasks containing the only cultures of Almalac which the plaintiff then owned or possessed. These flasks are made of thin glass, somewhat pyramidical in shape and were heremetically sealed with cotton.

Plaintiff asserts that these cultures were placed in the basement from a force of habit and perhaps to protect his Almalac cultures from contamination by his other cultures which he had in his laboratory on the first floor of his dwelling house. The temperatures in the basement and in the laboratory were about the same. When the inside door was pushed open, it struck the Erlenmeyer flasks, broke them and spilled the contents on the floor, amounting to their complete destruction. The plaintiff had no sample, formula or analysis of the culture of Almalac and was unable to replace it.

It is the permanent financial loss of the business of the

manufacture and sale of Almalac for which damages are claimed.

The evidence received is largely circumstantial and contains many scientific explanations. The records of the business used as evidence, are meager and incomplete.

The difficulty in the case involves the proper standard for the measurement of damages, if any, which accrued to the plaintiff by reason of the permanent loss of his business.

The usual test is the market value of the thing lost, at the time it was destroyed. There is no proof of any market value and it appears that there is no market value except that Yoghourt lactic acid milk culture of established and recognized quality and purity can be purchased at any time for approximately two dollars per culture.

No evidence was introduced as to future profits for the reason that such evidence would be too speculative, uncertain, remote and contingent to form a basis for the measurement of damages. 25 C. J. S. Damages, Sec. 42b, page 518.

The first assignment of error is that the verdict and judgment are contrary to the weight of the evidence.

While it is true the evidence is conflicting and somewhat circumstantial in character, the jury as the trier of the facts must have found the unlawful entry of the employee of the defendant in the course of his employment was the cause of the breaking of the flasks containing the cultures of Almalac and ending the business of the manufacture and sale of Almalac.

It follows that the plaintiff is entitled to at least nominal damages.

The second assignment of error is that the verdict and judgment are not sustained by sufficient evidence in respect of the amount thereof.

The records of the plaintiff for the period from 1917 to April 1934, inclusive, demonstrate an annual average income of $1861.18, exclusive of the reasonable value of the services of the plaintiff as an expense item.

The plaintiff testified that the reasonable value of such services amounted to from one hundred to two hundred and fifty dollars per month.

However, the period of eighteen years is too long a time upon which to base a calculation. Ten years is permissible

but three years would be more applicable except for the fact that the plaintiff claims a period of depressed business shortly before the destruction of his business.

The ten year period from May 1, 1925, to May 1, 1935, shows a net return of $1167.78 per year on the common average basis, and on the weighted average basis, of $882.00, exclusive of the expense of the services of the plaintiff. The last five years, namely, from May 1930 to May, 1935, shows an average annual income of $532.86 on the common basis of averages and $608.75 upon the weighted average basis, exclusive of the expense of the services of the plaintiff.

The peak of the business occurred in the year 1923, from which time the business was gradually diminishing to the point of extinction.

"The fact that personal property which is injured or destroyed by the wrongful or negligent act of another has no market value does not restrict the recovery to nominal damages only; its value or the plaintiff's damages must be ascertained in some other rational way and from such elements as are attainable." Kennedy v Televan, 103 Kan., 651; 15 American Jurisprudence, Sec. 125 on Damages, page 534.

The plaintiff testifies that the reasonable financial loss which he sustained by reason of being unable to continue the manufacture of Almalac is $25,000.00. From the record this appraisal by the plaintiff must have been founded either in sentiment or imagination.

"A recovery cannot be had on the basis of a purely sentimental value to the owner or of a fanciful price which he might for special reasons place thereon." 15 Amer. Juris., Sec. 125, on Damages, page 535.

"Where personal property is lost or destroyed by the wrongful act of another, the owner is entitled to recover such an amount as will compensate him for the actual pecuniary loss sustained." 8 R. C. L. Damages, Sec. 47, page 486.

"The authorities are uniformly to the effect that in those cases where the profits of a business may be shown in evidence and considered by the jury as a measure of damages, the jury

must be carefully instructed to avoid speculative or conjectural profits." 13 O. Jur., Secs. 77 and 78 on Damages, page 159.

A valuation in any given case is not capable of exact mathematical demonstration, but it is a matter more or less of approximation about which conclusions may differ.

The jury could not have reached its conclusion as to amount, from the evidence before it, except by conjecture, speculation or guess, or under the influence of passion or prejudice.

The third assignment of error is that the verdict and judgment are contrary to law.

It is admitted that the plaintiff had no license to handle a milk business in the City of Cleveland in accordance with the ordinances of the City of Cleveland.

It is therefore urged that the business of plaintiff was illegal and no recovery could be had in any event. However, plaintiff testified that some individual from the City of Cleveland stopped into his place of business and indicated that he did not need to take out a license.

A distinction should be made between a business that is unlawful by reason of being prohibited by statute, or as against public policy, and a business which is unlawful for failure to obtain a license or permit.

The mere fact that a business was unlicensed where license was required, does not defeat a recovery, on the basis of profits where its practice without a license is forbidden. 15 American Juris., Par. 157, Damages, page 575, and 20th Annotation, 52 L. R. A. 66, 67.

Discretion or absence of discretion in the granting authority further qualifies a business which requires a license or permit as to whether a particular business is of such character as to be unlawful and for which no recovery can be had.

The business of plaintiff was such, that if an application had been made, the license would have been obtained as of right.

It follows that this assignment of error is overruled.

The fourth assignment of error is that the verdict is excessive and appears to have been given under the influence of passion or prejudice.

What we have said with reference to assignment number

two is applicable to this assignment of error.

The fifth assignment of error is that the court erred in its charge to the jury.

"There is no good reasoning for requiring any higher degree of certainty in respect to the amount of damages than in respect to any other branch of a cause. Juries are allowed to act upon probable and inferential as well as direct and positive proof. And when from the nature of the case the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, no objection is perceived to placing before the jury all the facts and circumstances of the case having any tendency to show damages or their probable amount, so as to enable them to make the most intelligible and accurate estimate which the nature of the case will permit. This should, of course, be done with such instructions and advice from the court as the circumstances may require and as may tend to prevent the allowance of such damages as may be merely possible, or too remote or fanciful in their character to be safely considered as the result of the injury." Sutherland on Damages, 4th Ed., Sec. 70, page 267.

"A person to whom another has tortiously caused him harm is entitled to compensatory damages therefor if, but only if, he establishes by proof the extent of such harm and the amount of money representing adequate compensation with such certainty as to nature of the tort and the circumstances permit." Restatement of the Law, Torts, 4th Vol., Sec. 912, page 574.

"Where there is an interference with intangible rights such as an interference with a business, there may be great difficulty in proving the existence or amount of loss with any degree of certainty. It is necessary to show at least that the right is valuable. Thus, where a person has tortiously prevented another from entering into or continuing a business or entering into a particular transaction in which there is not only a likelihood of profit but also a chance for loss, it is essential to the recovery of compensatory damages that the injured person prove that the enterprise was or was likely to be profitable and that the chance for profits has been interfered

with." Restatement of the Law, Torts, Vol. 4, Sec. 912d, page 579.

"It is well settled that, where a regular and established business is wrongfully injured, interrupted or destroyed, its owner may recover the damages sustained, providing he makes it appear that his business was of that character and that it had been successfully conducted for such length of time that his profits from it are reasonably ascertainable—the correct rule for compensating the injured party being the ascertainment of how much less valuable the business was by reason of the interruption and the allowance of that amount as damages. As the value of such a business depends mainly on the ordinary profits derived from it, such value cannot be determined without showing what the usual profits are." Yates v Whyel Coke Co., 221, Fed. Rep., page 603, 607, 17 C. J. Sec. 200, page 914. Central Coke & Coal Co. v Hartman, 111 Fed. 96; Allison v Chandler, 11 Mich., 542, 558.

"The jury should be told that the plaintiff is entitled to recover compensatory damages, and then instructed as to their elements. At least it may be error to leave the measure of damages entirely to the discretion of the jury or to intimate to them that the damages are to be assessed without the application of any rule of law whatever. Thus, it has been said that the jury cannot be left to find any damages to which they think the plaintiff may be entitled, not exceeding the sum claimed in the declaration in an action for damages for personal injuries without any guide as to the basis for the computation. Of course the charge should not confuse the methods for estimating the different elements of damages sought to be recovered.

Thus, errors of this character are harmless where the plaintiff does not recover any damages, where the verdict gives the proper amount of damages, where there is competent evidence to show the damages alleged, and the verdict is not excessive and WHEN THE COMPLAINING PARTY DOES NOT REQUEST AN INSTRUCTION CORRECTLY STATING THE MEASURE OF DAMAGES or where it is apparent that the jury in assessing the damages followed a correct instruction." 15 Am. Juris. Sec. 370, page 808.

"Instructions regarding the elements and measure of damages should be so drawn as not to invade the province of the jury in this regard, and should be confined to matters of damages in issue by virtue of the pleadings and evidence in the case. Instructions so indefinite as to authorize the assessment of damages to which the party is not entitled should not be given." 15 Amer. Juris. Sec. 369, on Damages, page 807.

We find no error in this assignment.

The sixth assignment of error is that the court erred in overruling the defendant's motion for a new trial, and entering judgment for the plaintiff.

The court should have ordered a remittitur of sufficient amount to have reconciled the verdict with the evidence; and if the remittitur was unacceptable to the plaintiff, should have granted the motion for a new trial.

The amount of the verdict cannot be reconciled on any rational basis with the evidence, and the judgment thereon, even after remittitur, is not sustained by sufficient evidence; and further, the verdict rendered is excessive, appearing to have been influenced by passion or prejudice, for all of which reasons the judgment of the Common Pleas Court should be reversed and the cause remanded for a new trial.

In the manner and to the extent that the opinion of the majority of the court is at variance with the foregoing opinion, I respectfully dissent.