Horn et al., Appellees, *v.* Commonwealth Life Insurance Co., Appellant.

(No. 2720—Decided February 9, 1963.)

*Mr. James J. Gilvary*, for appellees.

*Messrs. Estabrook, Finn & McKee* and *Mr. John O. Henry*, for appellant.

CRAWFORD, P. J. Defendant appeals from a judgment for $5,000 in favor of plaintiff, the widow and beneficiary of Russel E. Horn whose life was insured in that amount by defendant. The judgment was rendered upon a special verdict which was accompanied by several interrogatories and answers thereto.

The verdict, interrogatories and answers were as follows:

"VERDICT

"We, the jury, being duly impaneled and sworn, by the concurrence of the undersigned jurors, being not less than three-fourths of our number, do find as follows:

"1) Russel E. Horn was the insured named in Policy No. 1062016, issued by the Commonwealth Life Insurance Company, for which application was made on January 19, 1960, and for which said policy was issued on January 20, 1960.

"2) Said policy was introduced in evidence in this case as plaintiff's exhibit 1, and the plaintiffs named in this case were the duly designated 'insured wife' and 'insured child.'

"3) The terms of said policy provide that the defendant upon the receipt of the proof of death of the insured, Russel E. Horn, would pay the sum of five thousand and no/100 ($5,000) dollars to the 'insured wife' named in the policy, and would issue supplemental policies on the life of the 'insured wife' and on the life of each of the then living 'insured child,' each of said supplemental policies to be in the amount of one thousand and no/100 ($1,000) dollars, with the payment of the premiums thereunder waived by the defendant.

"4) Policy No. 1062016 was in full force and effect on the 8th day of May, 1960, on which date the insured, Russel E. Horn, died.

"5) The plaintiffs in this case have furnished defendant proof of insured's death as required by the terms of said policy.

"6) The defendant has failed and refused to pay the amount of money stipulated in the policy, and has failed and refused to issue the supplemental policies stipulated in said policy.

"7) The answers to questions numbered 12.A, 12.B and 13 given in the application for insurance, which is attached to the policy in this case, were not wilfully false.

"8) The answers to questions numbered 12.A, 12.B and 13 given in the application for insurance, which is attached to the policy in this case, were not fraudulently made.

"9) The answers to questions numbered 12.A, 12.B and 13 given in the application for insurance, which is attached to the policy in this case, were not material and did not induce the company to issue the policy.

"10) The insurance company did not rely on the accuracy of the answers to questions numbered 12.A, 12.B and 13 given in the application for insurance, which is attached to the policy in this case, in issuing this policy.

"11) The deceased, Russel E. Horn, was in good health on January 19th and 20th, 1960, when the application for insurance was signed, and when the policy was issued.

"12) The plaintiffs should recover the amount of money and the supplemental policies provided for in policy No. 1062016, as set forth in sub-section 3 of this special verdict."

"INTERROGATORIES

"Question No. 1

"Did the decedent, Russel E. Horn, furnish information relating to his health in the written application for Policy No. 1062016?

"Answer: Yes.

"Question No. 2

"Was the written information furnished by the decedent, Russel E. Horn, in the application, regarding the condition of his health false?

No.
"Answer: ~~Yes. False in part.~~*

"Question No. 3

"Was this information, which Russel E. Horn furnished,

---

*This answer was stricken and changed, as indicated.

material to the purpose of the application and the issuance of the policy?

"Answer: Yes.

"Question No. 4

"Did the decedent, Russel E. Horn, willfully and with intent to mislead the insurance company make false statements as to his health in the application for insurance?

No.
"Answer: ~~Yes. False in part.~~*

"Question No. 5

"Did the defendant, Commonwealth Life Insurance Company, rely upon the information as to his health furnished by the decedent, Russel E. Horn, in the application for an insurance policy?

"Answer: Yes.

"Question No. 6

"Did the defendant, Commonwealth Life Insurance Company, or its agent, know that the statements regarding the health of Russel E. Horn, as contained in the application for insurance, were false?

"Answer: No.

"Question No. 7

"Did the decedent, Russel E. Horn, have tuberculosis of the kidney on January 19th and January 20th, 1960?

"Answer: Yes.

"Question No. 8

"Does tuberculosis of the kidney tend to weaken or undermine the constitution?

"Answer: Yes.

"Question No. 9

"If Russel E. Horn had tuberculosis of the kidney on January 19th or 20th, 1960, did it tend to weaken or undermine his constitution on those dates?

"Answer: No.

---

*This answer was stricken and changed, as indicated.

"Question No. 10

"Is tuberculosis of the kidney a grave or weighty trouble?
"Answer: Yes.

"Question No. 11

"Is tuberculosis of the kidney a mere indisposition?
"Answer: No.

"Question No. 12

"Was decedent, Russel E. Horn, in good health on January 19, 1960 and January 20, 1960?
"Answer: Yes."

The application is attached to and made a part of the policy. The questions and answers therein which are specifically referred to in the special verdict are as follows:

"12.a. Name below all causes or reasons for which you have been under observation, care or treatment; for which you have consulted a physician or practitioner or have been referred to a physician including insurance examinations, employment examinations and routine annual check ups. Give dates of any electrocardiographic or x-ray examinations. If none, so state.

"None.

"b. Do you now have, or have you *ever* had, any other disease, injury, or medical attention? (If so, give details, dates, etc. If none, so state.)

"None.

"13. Are you now in good health?

"Yes." (Checked)

Two sets of hospital records were introduced into evidence. The first covered the insured's stay in St. Elizabeth Hospital from September 29, 1957, to October 4, 1957, for the removal of a polyp from his right ear. The second covered the period spent by him in the same hospital from April 22, 1960, until his death on May 8, 1960. On the second occasion the insured's right kidney, which had been found to be tubercular, was removed. He died from reactions or complications following surgery.

The evidence indicates that when the insured applied for the policy and it was issued to him on January 20, 1960, he was engaging in his usual and normal activities, including bowling;

that he participated vigorously and skillfully in that sport until two or three weeks before the season ended in April 1960; that during this time there was no change in his outward appearance; that he made no complaints of any physical difficulty until "about the middle part of March" 1960, when he began to complain of frequent urination; and that in consequence of that complaint he received medical attention and examination which led up to his final hospitalization beginning April 22, 1960.

Assignment of error No. 1 is that the court excluded from the evidence the history and autopsy report contained in the hospital records compiled during insured's final stay in the hospital.

Both these items were in fact admitted, but questions were raised as to their proper use in connection with the examination of an expert medical witness. The witness was allowed to consider the facts shown by these exhibits, but not the opinions expressed therein. In this the court committed no error.

Assignments of error Nos. 3 and 4 concern the refusal to give certain special instructions requested by the defendant. The first of these explains when an insurer may establish an insured's answer in the application as a bar to a claim under the policy. The second states that if the insured was not a risk acceptable to the company, the jury must find for the defendant.

Both are general instructions. In returning the special verdict and answering the interrogatories, the jury was not called upon to find either "for the defendant" or for the plaintiff, nor to decide whether the defendant had established a bar to plaintiff's claim.

"Where a special verdict is to be returned by the jury * * * It is not necessary or proper to give general instructions as to the law of the case." *Dowd-Feder Co.* v. *Schreyer*, 124 Ohio St., 504, 516. See, also, *Landon* v. *Lee Motors, Inc.*, 161 Ohio St., 82; 53 Ohio Jurisprudence (2d), 52 and 53, Trial, Section 180.

These requested instructions were properly refused.

Assignment of error No. 5 challenges this language from the general charge of the court:

"* * * an affirmation of sound health in an insurance application does not imply absolute freedom from all bodily infirmities or tendencies to disease, but relates instead to such organic

ailments or diseases as incapacitate the assured in a permanent way from attending to his daily tasks or which have a distinct tendency to shorten his life."

Defendant argues that the established and accepted definition of sound health (or good health, as it is sometimes referred to, 30 Ohio Jurisprudence (2d), 428, Insurance, Section 474), is that set forth in paragraph five of the syllabus of *Metropolitan Life Ins. Co.* v. *Howle* (1900), 62 Ohio St., 204, as follows:

"In life insurance, 'sound health' means that state of health which is free from any disease or ailment that seriously affects the general healthfulness of the system; not a mere indisposition."

While the language differs, these two statements are not inconsistent or irreconcilable.

The court had given as special instruction No. 6 almost the identical language charged by the trial court and approved by the Supreme Court in the *Howle case, supra,* which was as follows:

"Sound [good] health as used with reference to life insurance, means that state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously, and not a mere indisposition which does not tend to weaken or undermine the constitution of the assured. The word 'serious' is not generally used to signify a dangerous condition but rather a grave or weighty trouble."

The portion of the general charge here objected to is taken verbatim from the first paragraph of the headnotes of *Washington Fidelity National Ins. Co.* v. *Lacey* (1933), 14 Ohio Law Abs., 260, which, in turn, is a substantial repetition of the language of the opinion in that case appearing on page 262. The same case is reported in 45 Ohio App., 104.

It is argued that the charge complained of gives undue importance to the testimony of several lay witnesses as to the insured's considerable activity and apparent good health. We do not consider this a valid criticism. The charge is a balanced one. Its final clause, "or which have a distinct tendency to shorten his life," applies to the theory and the expert medical evidence of the defendant.

Assignment of error No. 6 is directed to the following language in the general charge:

"I think I ought to point out if the evidence is evenly balanced either party will not prevail because the burden of proof is on the defendant in this case."

Plaintiff's counsel agrees that this portion of the charge is incorrect. Both sides have apparently given the only possible interpretation to the language "either party will not prevail" as meaning "neither party will prevail." It is a general charge and therefore improper and inapplicable in the case of a special verdict. It does not follow, however, that it is prejudicial. It applies only to a task which the jury is not called upon to perform.

The case revolved about the affirmative defenses. With respect to them, the court had properly charged that the burden of proof was upon the defendant. Therefore, the only instruction upon burden of proof which the jury had the power to follow was correct.

The portion of the charge here complained of, although incorrect, was not prejudicial.

Assignments of error Nos. 2, 9 and 10, insofar as they involve the sufficiency and weight of the evidence, are not well taken. The evidence is such as to justify submission to the jury of the issues it was asked to decide.

Portions of the argument in support of these assignments relate also to the questions presented by assignments of error Nos. 7 and 8.

Assignment of error No. 7 is that:

"The trial court erred in requiring the jury to revise or reframe its answers to interrogatories numbered 2 and 4."

These answers and interrogatories are set forth above. The record also shows the following:

"Thereupon, the jury having deliberated, submitted interrogatories to the court:

"The Court: I think I will send the interrogatories back for you to answer two of the questions; you have answered two of them false in part; I will hand them back until you have answered them 'yes' or 'no.' The court has no way of knowing which part is false and what is not.

"Foreman: We understood you to say we could put an answer in on the side.

"The Court: It is abstract, what part is true, what isn't.

"Mr. Gilvary: I think they understood you to say if nine couldn't answer.

"The Court: I want them to answer this 'yes' or 'no.'

"And thereupon, the jury having further deliberated, returned the interrogatories and special verdict in favor of the plaintiffs, to the court."

It appears that the jury first answered both interrogatories numbered 2 and 4, "Yes. False in part." Those answers were reasonable and responsive. But in compliance with the court's requirement that they answer "yes" or "no," they changed both answers to "No."

The court did not direct or suggest whether the answers should be yes or no. Such a course would clearly have been prejudicially erroneous. *Elio* v. *Akron Transportation Co.* (1947), 147 Ohio St., 363; *Bradley, an Infant,* v. *Mansfield Rapid Transit, Inc.* (1950), 154 Ohio St., 154. In these cases the Supreme Court also indicated disapproval of a trial court's directing or authorizing a jury to reform its answers. Paragraph two of the syllabus in *Elio* v. *Akron Transportation Co., supra,* reads:

"A trial court has no authority to require a jury to revise or reframe its answer to an interrogatory when the intention of the jury may be obtained from the answer given. Such answers are to be construed liberally."

In the present case, the jury obviously found that some, but not all, of the insured's answers on the application were wilfully false and made with intent to mislead the insurance company. They were denied the right to say so. Instead, they were required to say that the answers were either wholly false or wholly true, after already finding that they were not wholly either. In addition to the three questions and answers in the application which have already been set forth, there were several others which bore a close relationship to the applicant's health. There was varied and sometimes conflicting evidence bearing upon the truth of the answers to several questions. Hence, it would not be surprising that the jury might find some true and others false.

For example, here are question and answer No. 5:

"Q. Has albumen or sugar ever been found in your urine or have you ever been treated for such condition? A. No." (Checked.)

There was evidence to show an excessive amount of albumen in the insured's urine during his hospitalization in 1957.

On the other hand, here are question and answer No. 4:

"Q. Have you had or have there been any cases of insanity, mental trouble, tuberculosis or epilepsy in your family or have you occupied the same home or lived with a tubercular person? A. No." (Checked)

We find no evidence whatever to dispute this answer.

We recognize the problem presented to the trial court by the jury's original answers to interrogatories 2 and 4. But the difficulty arose, not from any failure of the jury to give appropriate answers, but from the lack of detail required of them by the interrogatories themselves. The situation could have been avoided if each of these two interrogatories had been followed by another asking in effect: "If your answer to question No. 2/4 is yes, what information so furnished was false? Answer: ........" Such combinations of interrogatories are approved in *Bradley, an Infant,* v. *Mansfield Rapid Transit, Inc., supra.*

If the special verdict and the answers to the special interrogatories left the court in a quandary so that it could not determine what judgment should be entered, the proper course was to order a new trial. *Aetna Casualty & Surety Co.* v. *Niemiec* (1961), 172 Ohio St., 53; 53 Ohio Jurisprudence (2d), 232, Trial, Section 311.

Defendant claims that it was entitled, at various stages of the trial, to a judgment, and to a judgment notwithstanding the verdict. Counsel argues that it established, and that the jury's original answers to the special interrogatories found, that the insured's wilfully false answers on the application, relied upon by the defendant, created a bar to plaintiff's recovery under the authority of Section 3911.06, Revised Code; *Metropolitan Life Ins. Co.* v. *Howle, supra*; and *Jenkins* v. *Metropolitan Life Ins. Co.* (1961), 171 Ohio St., 557.

It is not entirely clear that the original answers would have supported a judgment for the defendant. But inasmuch as the

jury, rightly or wrongly, was compelled to and did abandon these answers, they were no longer before the trial court.

Assignment of error No. 8 is that:

"The trial court erred in overruling plaintiffs' motion for a new trial."

For the reasons just stated, this motion should have been sustained.

Assignments of error Nos. 7 and 8 are well taken.

The judgment will be reversed and the cause remanded to the Court of Common Pleas for a new trial.

*Judgment reversed.*

KERNS and SHERER, JJ., concur.